UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAQUAVIS LURAY TAYLOR,

                Petitioner,

v.                                           CASE NO. 2:08-CV-11823
                                           HONORABLE NANCY G. EDMUNDS

NICK LUDWICK,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.     Introduction**

Michigan prisoner Jaquavis Luray Taylor ("Petitioner") has filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in violation of his

constitutional rights.  Petitioner was convicted of assault with intent to do great bodily harm less

than murder, assault with intent to rob while armed, conspiracy to commit armed robbery, felon in

possession of a firearm, and possession of a firearm during the commission of a felony following

a jury trial in the Genesee County Circuit Court in 2006.  The trial court sentenced Petitioner as a

habitual offender, second offense, to concurrent terms of 80 to 180 months imprisonment for

assault with intent to do great bodily harm less than murder, 240 to 480 months imprisonment for

assault with intent to rob while armed, 240 to 480 months imprisonment for conspiracy to commit

armed robbery, and 47 to 90 months imprisonment for felon in possession of a firearm.  Petitioner

also received a consecutive two-year sentence for possession of a firearm during the commission

of a felony.  In his application, Petitioner claims that trial counsel rendered ineffective assistance

for failing to seek suppression of his incriminatory police statement on the basis that the *Miranda*

warnings were stale and/or the statement was involuntary.  For the reasons stated, the Court

denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability

and leave to proceed on appeal in forma pauperis.

## II.  Facts and Procedural History

The Court adopts the statement of facts set forth by the Michigan Court of Appeals as

follows:

> In October 2005, two teenagers attempted to rob Alex Powell, a pizza deliveryman,
> on West Dayton Street in Flint, Michigan. One of the teenagers shot Powell with a
> handgun. The following day, police officers brought defendant and his twin brother,
> Janarvis Taylor, to the police station for questioning. In the following hours, two
> officers interviewed defendant and Janarvis individually on three separate occasions.
> In his third interview, defendant, who had not been readvised of his *Miranda* rights
> since his first interview, admitted to being present on West Dayton Street and tussling
> over the handgun when it fired.

*People v. Taylor*, No. 271635 at 1 (Mich. Ct. App. Oct. 16, 2007) (footnote omitted).

The police interviews were videotaped, entered into evidence at trial, and played for the

jury.  Janarvis was interviewed first, then Petitioner was interviewed.  The interviews continued

in that order two more times.  Both Janarvis and Petitioner received *Miranda* warnings and

waived their rights before the interviews began at approximately 2:31 p.m. and 3:00 p.m.

respectfully.  Each brother denied having any knowledge of, or involvement in, the attempted

armed robbery and shooting of the pizza deliveryman in their first two interviews.

In his third interview, Janarvis admitted that he was present on West Dayton Street on the

evening of the attempted robbery and shooting.  He stated that he was a few houses away from the

house where everything occurred.  Janarvis said that he left when he saw the gun because he

didn't want to be a part of it.  He described the gun as black and chrome with a clip.  According to Janarvis, when he heard the gunshot, he ran; Petitioner was in the road at the time.

Petitioner's third interview started at approximately 7:30 p.m., four and one-half hours after the beginning of his first interview.  In that interview, Petitioner admitted that he was present on West Dayton Street when the attempted robbery and shooting occurred and that another man had tried to give him a gun – a chrome revolver with a black handle.  Petitioner indicated that as he and this other man were handling the gun, it went off.  He stated that after the gun went off, both he and Janarvis ran away.

During Petitioner's first and second interviews, Sergeant Jeff Collins and Sergeant Ronald Nelson, the police officers in charge of interviewing him, told Petitioner that they did not believe him.  They told Petitioner that multiple witnesses had placed him at the scene of the attempted robbery and shooting and had indicated that Petitioner was the one holding the gun.  The officers also tried to get Petitioner to tell the truth by invoking religion, by telling Petitioner that his mother would want him to tell the truth, by telling Petitioner that if he were a real man, he would tell them what happened, and by telling Petitioner that he would not have a chance to raise his daughter unless he told them what happened.  And at one point, one of the officers told Petitioner that if he wanted to keep playing silly, they would just charge him with assault with intent to murder and put him in jail.  In addition, Sgt. Collins and Sgt. Nelson offered excuses that Petitioner could use that would lessen his culpability and indicated to Petitioner that they would take Petitioner's story to the prosecutor and explain to him what happened.  They also said that the first person to tell his story of involvement was the most likely to be believed and that this was Petitioner's opportunity to do so.

In November 2005, Petitioner participated in a line-up.  Alex Powell picked Petitioner and one other man out of the line-up as his assailants on the night of the attempted robbery and shooting.  When the officer present asked Mr. Powell how sure he was on a scale of 1 to 10, Mr. Powell rated his certainty at a 6 or 7 due to the poor lighting conditions and the type of clothes that the men wore that night.  Mr. Powell identified Petitioner as his assailant at trial.

Petitioner was also identified at trial by Latrice Green, the woman who lived in the house where the attempted robbery took place.  Ms. Green stated that there were four men or boys at her house that evening, including one of the twins.  Since she was unable to tell the twins apart, she did not know which twin was actually there.  She identified Petitioner as one of the twins at trial.  Ms. Green testified that before the pizza deliveryman arrived at her house, one of the men handed a silver revolver to either the twin or a light-skinned boy.  She further testified that when the pizza deliveryman arrived, she saw the twin and the light-skinned boy go outside and stand by the deliveryman's car.  She said that she saw the deliveryman backing out of the driveway and heard two gunshots.

Petitioner's brother, Janarvis, also testified at trial.  In his testimony, he denied any involvement with the attempted robbery and stated that his third statement that he made to the police was false.  Janarvis claimed that he only made that statement because one of the interrogating officers, Sgt. Nelson, told him that the only way they would let him go was if he made an incriminating statement.  He also testified that Sgt. Nelson wrote down an incriminating statement on a piece of paper for him to recite in the third interview.

Sgt. Nelson, in his testimony, denied Janarvis' accusations against him.  Sgt. Nelson testified that he did not speak with Janarvis outside of the interview room and did not write

anything down on a piece of paper for Janarvis to recite in the third interview.  According to Sgt.

Nelson, before Janarvis' third interview, a patrol officer indicated to Sgt. Nelson that Janarvis

wanted to talk and to tell the truth.

Petitioner's friends and family offered alibi testimony for Petitioner at trial.  There were

several inconsistencies among those witnesses, but they all testified that neither Petitioner nor his

twin brother, Janarvis, were present on West Dayton Street during the evening of October 20,

2005.  Petitioner did not testify on his own behalf.

At the close of trial, Petitioner was convicted and sentenced as set forth above.  After

sentencing, Petitioner pursued a direct appeal in the Michigan appellate courts, raising the same

claim that he has raised on habeas review.  The Michigan Court of Appeals affirmed Petitioner's

conviction and sentence.  *People v. Taylor*, No. 271635 (Mich. Ct. App. Oct. 16, 2007).  The

Michigan Supreme Court denied leave to appeal because it was "not persuaded that the question

presented should be reviewed."  *People v. Taylor*, 480 Mich. 1135, 745 N.W.2d 793 (2008).

Petitioner thereafter filed the present habeas petition, asserting the following claim:

> He received ineffective assistance of counsel because trial counsel failed to move
> to suppress his inculpatory police statement on the basis that the *Miranda*
> warnings were stale and/or his statement was involuntary.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

**III.    Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28

U.S.C. § 2241 *et seq*., governs this case because Petitioner filed his petition after the AEDPA's

effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to

>    any claim that was adjudicated on the merits in State court proceedings unless
>    the adjudication of the claim–
>
>    (1)     resulted in a decision that was contrary to, or involved an unreasonable
>            application of, clearly established Federal law, as determined by the
>            Supreme Court of the United States; or
>
>    (2)     resulted in a decision that was based on an unreasonable determination
>            of the facts in light of the evidence presented in the State court
>            proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see*

*also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court but unreasonably applies that principle to

the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*,

529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  "In order for a federal court to find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must

have been more than incorrect or erroneous.  The state court's application must have been

'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*,

529 U.S. at 409.

    Section 2254(d)(1) limits a federal habeas court's review to a determination of whether

the state court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to move to suppress Petitioner's incriminatory police statement on the basis that the *Miranda* warnings were stale and/or the statement was involuntary.   Respondent contends that this claim lacks merit and does not warrant habeas relief.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Id*. at 687.  Second, the petitioner must

establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must

have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

To prove deficient performance under the performance prong, a petitioner must identify

acts that were "outside the wide range of professionally competent assistance."  *Id.* at 690.  The

reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court

must recognize that counsel is strongly presumed to have rendered adequate assistance and to

have made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at

690.  The petitioner bears the burden of overcoming the presumption that the challenged actions

might be considered sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong of *Strickland*, a petitioner must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to

undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the [proceeding] cannot be relied on as having produced a just result."

*McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at

686).

A.      Stale *Miranda* Warnings

Petitioner asserts that trial counsel was ineffective for failing to seek suppression of his

police statement on the grounds that his *Miranda* warnings were stale.  Petitioner claims that

because there was a four and one-half hour period of time between the giving of his *Miranda*

warnings and  his incriminatory police statement, his *Miranda* warnings were stale and,

therefore, his police statement was unconstitutionally obtained.

The sole federal case upon which Petitioner relies in support of this argument is *Wyrick v. Fields*, 459 U.S. 42 (1982).  But the Court in *Wyrick* did not consider the circumstances under which *Miranda* warnings become stale; it considered whether a defendant, who was represented by an attorney and waived the right to have his attorney present at a polygraph examination, had to be re-advised of his rights before police questioned him about the polygraph results.  As the Respondent points out in its brief, the issue in *Wyrick* is inapplicable to Petitioner's case.

There is no United States Supreme Court precedent that addresses the point at which *Miranda* warnings become stale.  Therefore, it is necessary to look to the lower courts for guidance.  "'The courts have generally rejected a *per se* rule as to when a suspect must be readvised of his rights after the passage of time or a change in questioners.'"  *United States v. Weekley*, 130 F.3d 747, 751 (6th Cir. 1997) (quoting *United States v. Andaverde,* 64 F.3d 1305, 1312 (9th Cir.1995)).

The United States Court of Appeals for the Sixth Circuit has adopted a totality of the circumstances approach when examining whether the delay between the giving of *Miranda* warnings and the interrogation renders the warnings stale.  *United States v. White,* 68 Fed. Appx. 535, 538 (6th Cir. 2003) (citing *Weekley*, 130 F.3d at 750).  This totality of the circumstances analysis can be completed by answering two questions: (1) Did the defendant know and understand his rights when the *Miranda* warnings were given? (2) Did anything happen between the *Miranda* warnings and the defendant's confession, such as the lapse of time or another intervening event, that rendered the defendant completely unable to understand the effect of waiving his rights before talking to the police?  *United States v. Jones*, 147 F. Supp. 2d 752, 761

2:08-cv-11823-NGE-MKM   Doc # 7   Filed 10/22/09   Pg 10 of 18   Pg ID 1703

(E.D. Mich. 2001) (Gadola, J.) (citing *United States v. Vasquez,* 889 F. Supp. 171, 177 (M.D. Pa.

1995)); *see also United States v. Pruden*, 398 F.3d 241, 246-47 (3d Cir. 2005).

The Michigan Court of Appeals denied relief on this claim, finding nothing in the record

to cause Petitioner to believe that his *Miranda* rights no longer applied.  The court explained in

relevant part:

> The prosecution may not use a custodial statement against a defendant unless the
> defendant, prior to being questioned, was warned of his *Miranda* rights.  *People v.*
> *Harris*, 261 Mich App 44, 55; 680 N.W.2d 17 (2004).  The police are not, however,
> required to readvise a defendant of his *Miranda* rights in every subsequent interview.
> *People v. Littlejohn*, 197 Mich App 220, 223; 495 N.W.2d 171 (1992); *People v.*
> *Godboldo*, 158 Mich App 603, 606-607; 405 N.W.2d 114 (1986). . . .
>
> . . . .
>
> Although four and a half hours passed between the time defendant was advised of his
> *Miranda* rights and when he made his incriminatory statement, there were no
> circumstances indicating to defendant that his *Miranda* rights no longer applied. All
> three of defendant's interviews occurred in the room where the officers advised him
> of his *Miranda* rights. The interviews were all conducted by the same officers and
> involved the same subject matter, the attempted armed robbery of Powell. Further,
> before and after each interview, the officers returned defendant to the same holding
> cell.

*Taylor*, No. 271635 at 1, 3.

The Michigan Court of Appeals' determination is not contrary to, nor an unreasonable

application of, federal law or the facts.  First, there is nothing in the record to suggest that

Petitioner did not know and understand his rights when the *Miranda* warnings were given.

Petitioner does not contest that the police advised him of his rights before the first interview took

place and that he signed a written waiver of those rights.  The record also reveals that Petitioner

has had previous encounters with the police in which his rights were explained to him.

Second, the passage of time between the *Miranda* warnings and Petitioner's confession

did not render Petitioner completely unable to understand the effect of waiving his rights.

Petitioner incriminated himself approximately four and one-half hours after receiving his *Miranda* warnings.  Such a brief passage of time by itself is not sufficient to render *Miranda* warnings stale.  *See Jarrell v. Balkcom*, 735 F.2d 1242, 1254 (11th Cir. 1984) (inculpatory statement made less than four hours after *Miranda* warnings not inadmissible because warnings were not stale); *Pruden*, 398 F.3d at 247-48 (twenty-hour delay between *Miranda* warnings and confession does not make confession inadmissible);  *White,* 68 Fed. Appx. at 538 (*Miranda* warnings not stale after three days where defendant was reminded of his rights on the third day); *cf. Jones*, 147 F. Supp. 2d at 761-62 (*Miranda* warnings stale after eighteen hours where defendant was interviewed at two different locations by two different officers).

Third, there are no other circumstances that rendered Petitioner completely unable to understand the effect of waiving his rights before talking to the police.  Petitioner was interviewed three separate times within four and one-half hours.  During that time, Petitioner never left police custody; he was not transferred or relocated to a different building or department.  Each interview took place in the same room by the same two officers and Petitioner was returned to the same holding cell after each interview.  Furthermore, all three interviews concerned the same incident – the attempted armed robbery and shooting of Alex Powell.

Because Petitioner's *Miranda* warnings were not stale, counsel may have reasonably determined that Petitioner's statement was admissible and that any motion to suppress the statement would be futile.  Counsel cannot be deemed deficient for failing to make a futile objection or motion.  *See McQueen*, 99 F.3d at 1328 (stating that "[i]t is not ineffective assistance to fail to raise erroneous claims.").  Because Petitioner cannot establish that counsel's performance was deficient or prejudicial to his defense, Petitioner's ineffective assistance of

11

counsel claim based on counsel's failure to seek suppression of Petitioner's confession on the grounds that the *Miranda* warnings were stale fails.

      B.      <u>Involuntary Police Statement</u>

Petitioner also asserts that trial counsel was ineffective for failing to seek suppression of his police statement on the grounds that it was involuntary. Petitioner claims that his statement was involuntary because the police subjected him to psychological coercion that wore down his free will and caused him to incriminate himself.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if (1) the police extorted the confession using coercive activity, (2) the coercion was sufficient to overbear the suspect's will, and (3) the suspect's will was, in fact, overcome by the coercive police activity. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988); *see also United States v. Johnson*, 351 F.3d 254, 261 (2003). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include:

1.      Police Coercion (a "crucial element")
2.      Length of Interrogation
3.      Location of Interrogation
4.      Continuity of Interrogation
5.      Suspect's Maturity
6.      Suspect's Education
7.      Suspect's Physical Condition & Mental Health
8.      Whether Suspect Was Advised of Miranda Rights

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

Without coercive police activity, however, a confession should not be deemed involuntary.

*Connelly,* 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a

confession is not 'voluntary' within the meaning of the Due Process Clause").  Coercion may be

psychological, as well as physical.  *See Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991);

*Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).  A habeas petitioner bears the burden

of proving that a confession was involuntary.  *See Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir.

1987).

The Michigan Court of Appeals denied Petitioner relief on this claim, finding that nothing

in the record showed that Petitioner's statement was involuntary.  The court explained in relevant

part as follows:

> Based on the record before us, we believe that even if the interviewing officers
> engaged in objectionable interrogation tactics when they told defendant that, if he
> continued to "play silly," they would book him in jail and charge him with armed
> robbery and assault with intent to murder and that, if he did not confess, another
> person would raise his child, it is not apparent from the record that, under the totality
> of the circumstances, defendant's incriminatory statement in this instance was the
> result of police misconduct or coercion. *Givans, supra*
>
> At the time of the questioning, defendant was 18 years old. He completed the 11th
> grade, received good grades, and had prior experience with the police. There is no
> evidence that defendant was injured, intoxicated, drugged, ill, deprived of food, sleep,
> or medical attention, physically abused, or threatened with physical abuse during the
> questioning. Nor did the officers make promises of leniency to defendant. The officers
> informed defendant that, if he told the truth, they would talk to the prosecutor on his
> behalf. This statement did not imply that defendant would not be charged with a crime
> or that he would be charged with a lesser crime and it cannot be deemed an improper
> promise of leniency. See *People v. Carigon*, 128 Mich App 802, 809-811; 341
> N.W.2d 803 (1983). Further, while the officers made false statements to defendant
> regarding their knowledge of the crime, false statements of fact are generally
> insufficient to render an otherwise voluntary statement involuntary. *People v. Hicks*,
> 185 Mich App 107, 113; 460 N.W.2d 569 (1990).
>
> . . . .
>
> Moreover, all of the police conduct of which defendant now complains occurred

13

during his first two interviews. Defendant did not confess any involvement in the crime until his third interview. When the officers brought defendant into the interview room for the third time, they informed him that Janarvis "set the record straight." Defendant then made his incriminatory statement. Accordingly, we cannot find that police misconduct or coercion, rather than the knowledge that Janarvis "set the record straight," caused defendant to confess.

*Taylor*, No. 271635 at 2-3.

The Michigan Court of Appeals' decision is neither contrary to clearly established federal law, nor an unreasonable application of the law or facts of this case. At the time of his interrogation in October 2005, Petitioner was 18 years old and had completed the 11th grade with good grades. He also had prior experience with the criminal justice system. The record thus indicates that he was sufficiently mature and knowledgeable to understand his rights and the seriousness of his situation. *See Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009) (holding that a defendant who was 19 years old and had a troubled upbringing, poor education, and low IQ voluntarily confessed).

While in custody, Petitioner was interviewed three separate times over a four and one-half hour period. He received proper *Miranda* warnings and waived his rights before the first interview began. Petitioner was interviewed in the same room by the same officers and was placed in the same holding cell during interview breaks. There is no indication that the interview room or the holding cell were intimidating or unkempt. There is also no evidence that Petitioner was physically abused during the interviews or that he was in poor health, under the influence of drugs or alcohol, injured, or deprived of food, water, or medical treatment.

Petitioner asserts that he was subject to psychological coercion because the police officers played to his emotions by speaking about his mother and his daughter, by invoking religion, and by challenging his manhood. He also claims that the officers improperly threatened him with

14

criminal charges and made promises of leniency.  Lastly, Petitioner contends that he was coerced

because the police officers indicated that witnesses had implicated him in the crime.

Petitioner has not shown that he was subject to psychological coercion sufficient to render

his confession involuntary.  First, the police officers' references to Petitioner's family, religion,

and manhood were not objectively coercive.  An interrogator's appeal to a defendant's emotions

generally does not constitute police coercion.  *McCall v. Dutton*, 863 F.2d 454, 460 (6th Cir.

1988) ("mere emotionalism and confusion" did not by itself constitute police coercion); *Hopkins*

*v. Cockrell*, 325 F.3d 579 (5th Cir. 2004) (same). This is so even when the emotional appeal

concerns the defendant's family.  *See, e.g., United States v. Haynes*, 301 F.3d 669, 684 (6th Cir.

2002) (statement voluntary despite alleged threat of legal action against defendant's girlfriend and

daughter); *United States v. Brave Heart*, 397 F.3d 1037, 1041 (8th Cir. 2005) (confession was

voluntary although investigator told defendant that he understood defendant's "stress and

pressure" and it was unfair that his son would bear responsibility for death).  Even if the

interrogating officers' comments tended to make Petitioner upset, nervous or frightened, such

appeals to his emotions were not so egregious as to render his statements involuntary.  *See*

*Sullivan v. Alabama*, 666 F.2d 478, 483 (11th Cir. 1982); *cf. Beecher v. Alabama*, 389 U.S. 35, 38

(1967) (confession was involuntary where officers wounded the suspect and ordered him at

gunpoint to confess or be killed).

Second, contrary to Petitioner's claim, the officers did not improperly threaten Petitioner

or make promises of leniency.  The record indicates that the officers advised Petitioner of possible

charges that he could face and explained that they would speak to the prosecutor on his behalf if

he cooperated and told the truth about the incident.  Such comments are not objectively coercive.

*See United States v. Gatewood*, 184 F.3d 550 (6th Cir. 1999) (rejecting claim that confession was involuntary where, among other things, the interrogation occurred during the day and lasted only three and one-half hours, despite the defendant's allegation that officers had threatened to charge him with other crimes and keep him from his wife).

Third, the police officers' false statements about their knowledge of the crime did not rise to the level of coercive activity.  Police trickery alone will not invalidate an otherwise voluntary statement.  *See Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (interrogator's misrepresentation that co-suspect had already confessed did not render suspect's confession coerced).  Following *Frazier*, most courts have held that police deception about evidence does not render a confession involuntary.  *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) ("A defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is."); *accord United States v. Haswood*, 350 F.3d 1024, 1029 (9th Cir. 2003); *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998).  The officers' comments about their investigation and the evidence against Petitioner did not constitute coercion.

Nonetheless, even assuming that some of the police tactics were objectively coercive, Petitioner has not shown that any misconduct was sufficient to overcome his will or that it was the crucial motivating factor for his confession.  The record indicates that Petitioner made his inculpatory statements during his third interview after being told about his brother's confession. That confession, rather than the police officers' prior remarks, appears to be what motivated Petitioner to admit his involvement in the crime.  There is no indication that the allegedly coercive actions by the police caused Petitioner to make his statement.  Moreover, the police use of the brother's statement during the interrogation did not constitute coercion.  *Cf. United States*

*v. Lux*, 905 F.2d 1379, 1382 (10th Cir. 1990) (defendant's statements were voluntary, notwithstanding the fact that the detective lied to the defendant about her co-defendant's statement, leaned over and hit his fist on the table, and accused the defendant of lying).

Considering the totality of the circumstances, the Court concludes that Petitioner has not shown that his police statement was involuntary. Consequently, any motion by counsel to suppress that statement on such a basis would have been denied. As noted, defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Petitioner has thus failed to establish that trial counsel's performance was deficient or prejudicial to his defense as required under *Strickland*. Petitioner's ineffective assistance of counsel claim based on the failure to seek suppression of his statement on the ground that it was involuntary fails.

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claim contained in his petition  Accordingly, the Court **DENIES** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's dispositive decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists

could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the court may not

conduct a full merits review, but must limit its examination to a threshold inquiry into the

underlying merit of the claims.  *Id*. at 336-37.

     Having considered the matter, the Court concludes that Petitioner has not made a

substantial showing of the denial of a constitutional right as to his habeas claims.  The Court,

therefore, **DENIES** a certificate of appealability.  The Court also concludes that Petitioner should

not be granted leave to proceed on appeal in forma pauperis as any appeal would be frivolous.

*See* Fed. R. App. P. 24(a).  Accordingly, the Court **DENIES** Petitioner leave to proceed on appeal

in forma pauperis.

     **IT IS SO ORDERED**.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated:  October 22, 2009


I hereby certify that a copy of the foregoing document was served upon counsel of record on
October 22, 2009, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager